Schwartz v. Kaufman, 159 Ill. App. 503.

Adolph Schwartz et al., Defendants in Error, v. Joseph Kaufman, Plaintiff in Error.

Gen. No. 15,186.

PLEDGES—*when conversion established.* *Held,* under the evidence in this case, that there was an actual, absolute and unconditional tender by the pledgor and a refusal by the pledgee to accept such tender, and a consequent conversion of the pledge by the pledgee.

Error to the Municipal Court of Chicago; the Hon. W. W. MAX-WELL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Affirmed. Opinion filed January 24, 1911.

MENZ I. ROSENBAUM and LOUIS M. CAHN, for plaintiff in error.

G. E. M. PRATT, for defendants in error.

MR. PRESIDING JUSTICE MACK delivered the opinion of the court.

About April 13, 1908, the plaintiffs applied to defendant for a loan of $500. They were then moving their factory from Chicago to Milford, Illinois. Defendant held a claim of $85 against Louis Schwartz, a brother of the plaintiffs. Defendant agreed to loan $500 for sixty days on condition that the plaintiffs would assume and pay this $85 within the sixty days, and give as collateral certain manufactured goods. Defendant went to the factory of the plaintiffs and examined the goods offered as security, which were valued at $835.75. Subsequently defendant refused to loan $500 on the security offered, claiming plaintiffs agreed to give from $800 to $1,000 worth of goods, and at defendant's suggestion, plaintiffs put in 117 sweaters in an unfinished condition, worth, according to the testimony, $409.50.

The goods were packed in cases and delivered at defendant's office on April 16, 1908. After the goods

were received, he opened the cases to ascertain whether all the goods agreed to be delivered were there, and after his examination plaintiffs called for the $500.

Defendant then drew up the following agreement:

"Joseph Kaufman advances $500.00 to the Schwartz Knitting Mills, Adolph and Nathan Schwartz, proprietors of same, and holds as security for the $500.00, merchandise comprised of sweater coats and sweaters as per attached invoice, and which they are to pay back the $500.00 and all our claims against them within thirty days. All these goods are free from incumbrances or liens of any nature. Unless the $500.00 and our claims against Adolph and Nathan Schwartz are not paid within sixty days from date, all merchandise held by Joseph Kaufman becomes the property of said Joseph Kaufman.

(Signed)                    SCHWARTZ KNITTING MILLS,
  Adolph Schwartz, Nathan Schwartz, Proprietors."

Some of the facts are controverted, but for the purposes of this decision we shall assume the correctness of defendant's version that the $500 was changed to $300 by consent at the time the money was paid. In any event, only $300 was advanced.

Plaintiffs moved to Milford.

On May 25, 1908, defendant wrote to plaintiffs in part, as follows:

"We are about to close up our office until the middle of August, and would like for you to settle the amount you owe us, as you promised to pay us all by May 1st, but you have not fulfilled your promise. It is now growing near the sixty days limit which we will claim the goods we hold and try to dispose of them for what we can get. We can't quite understand your action in this matter. Let us know at once what you intend doing, as we want the matter settled."

Plaintiffs did not answer this letter until June 11th, and after excusing the delay because of the writer's absence from the city until June 11th, they say, "that the reason we did not let you know from us sooner was entirely not for lack of intention or will, but simply because we were up against it."

June 13th defendant again writes that the Chicago office is closed, and that he will not be in Chicago for some time—that plaintiffs can either send a draft or pay defendant's expenses to Chicago of about $8.

On June 15th plaintiffs write that they want goods shipped to Milford, Ill., and attach bill of lading to draft, as "we are unable to pay you any other way."

On June 16, 1908, defendant replied, "The goods in question will not leave our possession until we are paid in full $415.00. The time is drawing near, your sixty days are nearly over. * * * If cash is not forthcoming we will take steps to realize on the merchandise. * * * "

On June 18, 1908, plaintiffs answered, "You are either entirely unreasonable or have misunderstood our letter of the 15th. We have told you plainly that we are ready to pay you all we owe you, and in return for our payment, we want you to return to us all our goods you are holding as collateral. * * * " To which defendant replied on June 20, 1908: "There is no use for us to keep writing any longer. We will only send the goods when we receive our draft in full. If you cannot comply with this agreement, we will consider the goods our property and dispose of them in the way we see fit. * * * Now, unless you can comply with our demands, it will close the correspondence. Once for all, the goods will not leave our office until we receive all the money due us. If you want me to come to Chicago, I will come and deliver the goods in person, providing you send me $10 for expenses. Now, we must have the cash first, before we can move anything. We will answer no more letters, and will consider the matter closed unless we receive a draft in full or $10 for a trip to Chicago. Now, unless you can comply with either of these demands, we will consider the matter closed. * * * This is plain enough, we cannot talk plainer, and the cash must be coming at once. This is no bluff, we remain, etc.

P. S. Further argument is useless."

On July 6, 1908, plaintiffs' attorney wrote defendant, "They are in a position to pay this money any day that you will deliver the goods to them.     *     *     *

Will you kindly inform me when it will be convenient for you to deliver the goods in Chicago, at which time I will have Mr. Schwartz check them off and pay you the money that is due you," and on July 9, 1908, he again wrote: "Mr. Schwartz called at my office this morning with the cash to pay your claim. I have requested that he remain in the city for the next two days to give you an opportunity to turn over to him the goods upon payment to you of the money due you.

Kindly arrange for the delivery of same at once, and oblige."     *     *     *

On July 11th plaintiffs telegraphed defendant to Whitehall, Michigan, "Am here with the money to pay your account, when will you arrive?

Adolph Schwartz,

Great Northern Hotel,

Chicago."

On July 13, 1908, the attorney again wrote, "Mr. Schwartz has been in the city several days with the money to pay your account. I have written you and he has telegraphed you. We have heard nothing whatever in reply, and we shall therefore take it for granted that you have converted the goods to your own use, and shall take such action as we deem best on Wednesday of this week, if you do not put in your appearance or arrange for the delivery of the goods to Mr. Schwartz."

The following telegram was sent defendant July 15, 1908:

"Will pay your expenses and your claim if you will meet me here Thursday morning. Wire.

Adolph Schwartz,

Great Northern Hotel."

No answer was received to either of these telegrams or to any of these letters.

The plaintiffs waited till August 31, 1908, for defendant to deliver these goods to them, and receive his

money, at which date they filed this action to recover the value of these goods alleged to have belonged to the plaintiffs, and by the defendant to have been converted to his own use. The court found the issues for the plaintiffs and rendered judgment for $825 against the defendant. This is slightly less than the value of the goods as testified to, after allowing defendant the full amount of $415 claimed by him.

Assuming the correctness of defendant's contention, that there can be no recovery in this case without a conversion, and that there must be an actual tender of and refusal to accept the money due before a pledgee, who still retains the goods, can be deemed to have converted them (Brown v. Leary, 91 N. Y. Supp. 463), we are of the opinion that under the facts in this case the judgment of the trial court was correct.

Whether the debt became due in thirty or in sixty days is immaterial, because the pledgee took no steps to foreclose or sell the pledged goods. Plaintiffs were entitled to get back these goods at any time after maturity of the debt on a proper tender of the money. It was defendant's duty to be ready to receive the money and to deliver the goods in Chicago. Plaintiffs were not obligated either to follow him out of the jurisdiction into Michigan and to make a tender there, or to send the money to Michigan and take chances on getting back the goods, or to pay his expenses to return here. Notwithstanding this, defendant expressly stated on June 20th that unless they did this, "we will consider the goods our property. * * * Further argument is useless." That he meant this to be taken literally is demonstrated by his failure to answer any more letters or telegrams.

Plaintiffs were in Chicago at defendant's office in July with the full amount of money claimed by defendant; defendant was in Michigan; he was notified by letter and wire of the plaintiffs' readiness to pay and demand for their goods; his silence under the circum-

stances amounted to a reaffirmation of his declaration in the letter of June 20th.

These facts, in our judgment, prove, not a mere offer to pay, but an actual, absolute and unconditional tender, refusal and express conversion.

When the suit is not in replevin to recover specific goods, but is in trover because of the conversion, based on a refusal to deliver after a proper tender, and the value of the goods exceeds the debt, there is no requirement that the original tender be kept good in court.

*Affirmed.*